IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 04-CR-153-04-B

UNITED STATES OF AMERICA,

    Plaintiff,

v.

4.    ROBERT J. SIGG,

    Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

---

The United States, by and through Matthew T. Kirsch, Assistant United States Attorney for the District of Colorado, and the defendant, Robert J. Sigg, personally and by counsel Larry Pozner, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1.

### I. PLEA AGREEMENT

1.    The defendant will plead guilty to Count 4 of the superseding indictment, charging him with bank fraud, in violation of Title 18, United States Code, Section 1344.

2.    The defendant agrees to have his sentence determined by the application of the Sentencing Guidelines. The defendant waives any right to have facts that determine his offense level under the Guidelines alleged in an indictment and found by a jury. The defendant agrees that the facts that determine the offense level will be found by the Court,

Court Exhibit 1

227

by a preponderance of the evidence, and that the Court may consider any reliable evidence, including hearsay.

3.  The defendant agrees to pay the $100 special monetary assessment applicable to Count 4 at or before the time of sentencing.

4.  The defendant agrees to give his complete cooperation during the investigation and prosecution of any charges, including but not limited to meeting with government investigators or prosecutors at reasonable times and as often as they deem necessary, appearing voluntarily and providing truthful testimony at any grand jury or trial proceeding when requested, providing investigators with his current address and phone number until all defendants who might be charged are sentenced, and providing documents or items within his possession or control when requested.

5.  The United States Attorney's Office for the District of Colorado (the government) agrees that it will file no other federal criminal charges against the defendant based on matters currently known to the government or offenses based upon information provided by the defendant. The government further agrees that any information and testimony given by the defendant pursuant to this agreement will not be used against him, either directly or indirectly, in any criminal case except for prosecutions for perjury, making a false statement, or obstruction of justice, or for impeachment. Information and testimony will not be used against the defendant pursuant to Section 1B1.8 of the Sentencing Guidelines. Any information and testimony relating to the defendant's

2

involvement in crimes of violence, based on the common law definition of that term, is excluded from this agreement.

6. Based on the defendant's demonstrated and anticipated continued provision of substantial assistance to the government in the investigation and prosecution of others, the government agrees that it will file, before or at the time of the defendant's sentencing, a motion for downward departure, pursuant to Section 5K1.1 of the Sentencing Guidelines and Title 18, United States Code, Section 3553(e). This motion will recommend that the Court grant a downward departure to level 5, 4 levels from the expected final offense level, and that the Court sentence the defendant to a period of imprisonment of time served, to be followed by 5 years of supervised release.

7. The parties agree that the government's obligations under this plea agreement are expressly contingent on the defendant's performance of his obligations under the plea agreement. If the government can demonstrate that the defendant has breached this agreement by intentionally lying or attempting to mislead the government or law enforcement authorities, refusing to testify, or otherwise refusing to continue assisting the government in the investigation and prosecution of others, the government may, upon motion to the Court, be relieved of its obligation to file a Section 5K1.1 motion and may instead advocate the sentence otherwise applicable under the Guidelines. If the government demonstrates such a breach, any information or testimony given by the defendant in connection with this case can be used in any prosecution against him,

notwithstanding the provisions above.

8.  The government agrees to move to dismiss the remaining counts of the superseding indictment at sentencing.

9.  The government agrees that the defendant's restitution obligation should be reduced by any amounts actually recovered by the victim of the charged crime as a result of the forfeiture proceedings in this case.

10. This plea agreement is made pursuant to Rule 11(c)(1)(c) of the Federal Rules of Criminal Procedure.

## II. MAXIMUM STATUTORY PENALTIES

11. The maximum statutory penalty for the offense in Count 4 is: not more than thirty years of imprisonment, not more than a $1,000,000 fine, or both; not more than five years of supervised release; restitution, and; a $100 special assessment fee.

12. A prison sentence may be imposed for violation of the supervised release. Costs of supervision and/or incarceration may also be imposed. The conviction may also cause the loss of certain civil rights, such as the right to possess firearms, to vote, to hold elective office, and to sit on a jury.

## III. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

13. The parties agree that there is no dispute as to the material elements which establish a factual basis for the offenses of conviction. The defendant understands that in order to prove his guilt as to Count 4, the government must prove, beyond a reasonable

doubt, that:

    A.    The defendant knowingly executed a scheme to obtain moneys, funds, and other property owned by and under the custody and control of Washington Mutual, Inc. and Colonial Savings, F.A. by means of materially false and fraudulent pretenses and representations as detailed in Count 4 of the indictment;

    B.    The defendant did so with the intent to defraud; and

    C.    Washington Mutual, Inc. and Colonial Savings, F.A. were then insured by the Federal Deposit Insurance Corporation.[1]

14.    Pertinent facts are set out below in order to provide a factual basis of the plea and to provide facts which the parties stipulate are relevant, pursuant to §1.B1.3, for computing the appropriate guideline range.

15.    In "determining the factual basis for the sentence, the Court will consider the stipulation [of the parties], together with the results of the presentence investigation, and any other relevant information." (§6B1.4 Comm.)

16.    The parties agree that the evidence would show that the date on which conduct relevant to the offense (§1B1.3) began is approximately March 1, 2001.

17.    The parties agree that the government's evidence would be:

---

[1] O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions*, Fifth Ed., 2000, § 47.11.

5

Beginning at least by March 1, 2001, co-defendants Gerald P. Small, III and Robert E. Bichon devised a scheme to defraud various banks, including Washington Mutual, Inc. and Colonial Savings, F.A., whose deposits were then insured by the Federal Deposit Insurance Corporation. To execute the scheme, Small and Bichon prepared and caused to be prepared residential home loan documents in the names of straw buyers. The documents contained materially false and fraudulent representations, including representations about the straw buyers' employment, income, and intent to use the homes for whose purchase the loans were advanced as the straw buyers' primary residences. The documents also falsely and fraudulently indicated that the straw buyers were providing the down payments, when in fact the down payments were provided by Small, Bichon, or other of their associates. These false loan documents were prepared at and submitted through a company controlled by Small, Amerifunding, whose offices were in the Denver metro area.

One of these applications was made on or about March 23, 2001, in the name of Ryan Hall, for a loan in the amount of $680,000 for the purchase of 5808 South Dayton Street, Greenwood Village, CO. On or about March 26, 2001, Robert J. Sigg knowingly assisted with the execution of the scheme by falsely verifying Ryan Hall's employment at the Turner Group to a bank representative involved with underwriting the false and fraudulent loan application. Sigg received a check for $1,000 for this false verification. Washington Mutual, Inc. suffered a loss of $141,163.13 in connection with this loan.

## IV. <u>SENTENCING COMPUTATION</u>

18.    The parties stipulate that sentencing in this case will be determined by application of the sentencing guidelines, issued pursuant to Title 28, United States Code, Section 994(1), and Title 18, United States Code, Section 3553.

19.    To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are in dispute. (§6B1.4(b)) The parties' estimated guideline application for Count 4 is[2]:

    A.    The base guideline is U.S.S.G. §2F1.1(a), with a base offense level of 6.

    B.    Applicable specific offense characteristics include a 7-level increase because the offense involved loss of more than $120,000. U.S.S.G. §2F1.1(b)(1)(H).

    C.    The defendant should receive a 2-level decrease because he was a minor participant in the offense. U.S.S.G. §3B1.2(b).

    D.    The adjusted offense level for Count 4 would therefore be 11.

    E.    The defendant should receive a 2-level reduction for acceptance of responsibility. U.S.S.G. §3E1.1(a). The resulting offense level would therefore be 9.

    F.    The parties understand that the defendant's criminal history computation is

---

[2]The parties stipulate that the 2000 edition of the Guidelines Manual applies to avoid *ex post facto* issues.

7

tentative and that the criminal history category is determined by the Court. The defendant appears to have 1 criminal history point from a January 15, 1997, criminal impersonation conviction in Larimer County District Court case number 96CR830, and 1 criminal history point from a January 24, 1997, tampering conviction in Denver County District Court case number 96F02146. A total of 2 criminal history points would place him in Criminal History Category II.

G. The career offender/criminal livelihood adjustments do not apply.

H. The guideline range resulting from the estimated offense level of (E) above, and the tentative criminal history category of (F) above, is 6-12 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level of (E) above could conceivably result in a range from 4 months (bottom of Category I) to 27 months (top of Category VI).

I. Assuming the estimated offense level of (E) above, the fine range for this offense is $1,000 to $1,000,000, plus applicable interest and penalties. U.S.S.G. §5E1.2.

## V. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

20. The parties believe the sentencing range resulting from the proposed plea agreement is appropriate because all relevant, readily provable conduct is accounted for,

8

all pertinent sentencing factors are addressed, and the resulting sentencing range serves the interests of justice.

21. This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the United States nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

12-1-04
Date

Robert J. Sigg
Defendant

12/1/2004
Date

Larry Pozner
Attorney for Defendant

12/1/2004
Date

Matthew T. Kirsch
Assistant U.S. Attorney